UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SALLY W., on behalf of Catherine S.,
Deceased,

                                    Plaintiff,

v.                                                              5:19-CV-0993
                                                                (GTS/ML)

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       KENNETH R. HILLER, ESQ.
   Counsel for the Plaintiff
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226

SOCIAL SECURITY ADMINISTRATION            LUIS PERE, ESQ.
   Counsel for the Defendant               Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

Plaintiff Sally W. ("Plaintiff"), brings this action on behalf of her deceased daughter,

Catherine S. ("Claimant"), pursuant to Titles II and XVI of the Social Security Act, seeking

review of the final decision of the Commissioner of Social Security ("Defendant"), denying

Claimant's application for disability insurance benefits.  Presently before the Court are (1)

Plaintiff's motion for judgment on the pleadings (Dkt. No. 12), and (2) Defendant's motion for

judgment on the pleadings (Dkt. No. 13).  For the reasons set forth below, I recommend that

Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the Commissioner's decision denying Plaintiff disability benefits be vacated, and the matter be remanded, without a directed finding of disability for further proceedings consistent with this Report-Recommendation.

## I.    RELEVANT BACKGROUND

### A.    Procedural History

Claimant protectively filed for disability insurance benefits on September 9, 2013, alleging disability beginning July 29, 2013.  The claim was denied on December 10, 2013, and Claimant filed a written request for hearing on January 24, 2014. On March 19, 2015, Administrative Law Judge ("ALJ") Bruce Fein issued an unfavorable decision.  On August 12, 2015, the Appeals Council denied Claimant's request for review.  Thereafter, Claimant filed a civil action in the United States District Court for the Northern District of New York (the "District Court").  On November 19, 2015, the District Court issued a consent order, remanding the claim to Defendant for further administrative proceedings.  On December 11, 2015, the Appeals Council vacated the final decision of Defendant and remanded the claim to the ALJ for further proceedings consistent with the order of the District Court.  The Appeals Council's order remanding the case directed the ALJ to, *inter alia*, more fully evaluate opinion evidence, including the opinion of Dr. Justine Magurno.  ALJ Fein issued a second unfavorable decision on January 30, 2017.  Claimant appealed again to the District Court.  Claimant died on March 19, 2017, and Plaintiff proceeded as a substitute party.  On February 12, 2018, the District Court remanded because the ALJ failed to properly evaluate the opinions of Claimant's treating physicians and needed to re-contact Dr. Magurno.  On June 1, 2018, the Appeals Council

vacated the final decision of Defendant and remanded the case to an ALJ for further proceedings

consistent with the order of the District Court.

On February 8, 2019, ALJ David Romeo held a video hearing from Syracuse, New York.

Plaintiff and vocational expert, Howard Steinberg, testified at the hearing.  On April 12, 2019,

ALJ Romeo issued an unfavorable decision.  Plaintiff appealed to this Court.

### B.      Factual Background

Claimant was born on August 16, 1960, making her 52 years old on the alleged onset

date, 53 years old on the application filing date, 54 years old at the time of the first unfavorable

ALJ decision on March 19, 2015, 56 years old at the time of the second unfavorable ALJ

decision on January 30, 2017, and 56 years old at the time of her death.  Claimant had past

relevant work as a bookkeeper.  Claimant had severe impairments due to degenerative disc

disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), asthma,

ventricular tachycardia, peripheral vascular disease, obesity, hepatitis C, and cirrhosis of the

liver.

### C.      The ALJ's Decision of April 12, 2019

Generally, in his decision, the ALJ made the following seven findings of fact and

conclusions of law.  (Dkt. No. 6, Attach. 14 at 5-17.)  First, the ALJ found that Claimant last met

the insured status requirements for benefits under the Social Security Act on December 31, 2017.

(*Id.* at 8.)  Second, the ALJ found that Claimant did not engage in substantial gainful activity

during the period from her alleged onset date of July 29, 2013, until her death on March 19,

2017.  (*Id.*)  Third, the ALJ found that Claimant's lumbar degenerative disc disease, COPD,

asthma, ventricular tachycardia, peripheral vascular disease, obesity, hepatitis C, and cirrhosis of

the liver, are severe impairments.  (*Id.*)  Fourth, the ALJ found that from the alleged onset date to

the date of her death, Claimant did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404,

Subpart P, App. 1 (the "Listings").  (*Id.* at 11.)  Specifically, the ALJ considered Listings 1.04

(disorders of the spine), 3.02 (chronic respiratory disorders), 3.03 (asthma), 4.05 (recurrent

arrhythmias), 4.11 (chronic venous insufficiency), 4.12 (peripheral arterial disease), and 5.05

(chronic liver disease).  (*Id.*)  Fifth, the ALJ found that from the alleged onset date until the date

of death, Claimant had the residual functional capacity ("RFC") to perform

> sedentary work, as defined in 20 CFR 404.1567(a), except she could only
> occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl,
> and reach overhead.  She also needed an option to stand for two minutes
> every 30 minutes of sitting, but could remain on-task while standing.  The
> claimant needed to elevate her legs during the workday, which could be
> accommodated by the normal morning, lunch and afternoon breaks.  She
> could not climb ladders, ropes or scaffolds, and could not work in high
> exposed places or around moving mechanical parts.  She also needed to
> avoid concentrated exposure to respiratory irritants.

(*Id.*)  Sixth, the ALJ found that from the alleged onset date to the date of her death, Claimant

was capable of performing past relevant work as a bookkeeper because that work did not require

the performance of work-related activities precluded by Claimant's RFC.  (*Id.* at 16.)  Seventh,

the ALJ found that Claimant was not under a disability as defined by the Social Security Act 20

C.F.R. 404.1520(f), at any time from the alleged onset date of July 29, 2013, until the date of her

death on March 19, 2017.  (*Id.* at 17.)

### D.    Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes three arguments in support of her motion for judgment on the

pleadings.  (*See generally* Dkt. No. 12, Attach. 1 at 15-29 [Pl.'s Mem. Of Law].)

First, Plaintiff argues that the ALJ failed to follow the Appeals Council remand order to

properly evaluate the opinions of Plaintiff's treating physicians.  (*Id.*)  More specifically,

Plaintiff argues that the ALJ improperly discounted the opinions of Dr. Ashraf and Dr. Mitchell, Claimant's treating physicians, based on Claimant's daily activities, which is not a "good reason" for discounting treating physicians. (*Id.*)  Moreover, when discounting the opinions of the treating physicians, Plaintiff argues that the ALJ failed to discuss the length of treatment, consistency of the opinions, or the fact that the treating physicians were specialists. (*Id.*) Plaintiff also argues that although the ALJ cited to Dr. Magurno's opinion in support of Claimant's sitting limitation, that opinion did not support the ALJ's RFC. (*Id.*)  Plaintiff argues that the ALJ's failure to comply with the Appeals Council remand order, which directed the ALJ to provide "enough of an explanation" for not giving the treating physician's opinion's controlling weight "that there can be meaningful judicial review of the determination," should result in a remand solely for the calculation of benefits. (*Id.*)

Second, Plaintiff argues that the ALJ did not follow the Appeals Council remand order by failing to clarify Dr. Magurno's respiratory irritant limitation. (*Id.*)  More specifically, Plaintiff argues that the ALJ erred because the RFC limitation that Claimant avoid only concentrated exposure to irritants was in conflict with Dr. Magurno's opinion, which recommended that Claimant avoid all irritants and the ALJ's failure to obtain "any useful clarification from Dr. Magurno, [means that the ALJ] is still making up this limitation based on his own view of the medical evidence." (*Id.*)  In addition, Plaintiff argues that Dr. Magurno's opinion, "the only opinion the ALJ relied upon," was of limited value because (a) it was "based on one, very brief consultative examination in 2013," (b) Dr. Magurno "ha[d] no direct recollection" of Claimant, (c) it was "somewhat speculative," (d) it was silent as to how long Claimant could sit and originally opined "mild limitations for sitting," and (e) it was from 2013, and became stale based

5

on Claimant's substantial deterioration after it.  (*Id.*)  Plaintiff argues that, as a result, Dr.

Magurno's opinion did not constitute substantial evidence.  (*Id.*)

Third, Plaintiff argues that the ALJ erred in failing to proffer to Plaintiff's counsel the

letter that he sent to Dr. Magurno seeking clarification.  (*Id.*)  More specifically, Plaintiff argues

that the ALJ sent letters to Dr. Magurno asking her to clarify her opinion regarding Claimant's

exposure to respiratory irritants and ability to sit, and Plaintiff's counsel sought to have the

record include the ALJ's letters, but that the ALJ did not include his letters in the record.  (*Id.*)

Plaintiff argues that the failure to provide Plaintiff's counsel with the opportunity to review what

the ALJ asked Dr. Magurno was harmful error and violated due process.  (*Id.*)

### E.       Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of his motion for judgment on the

pleadings.  (*See generally* Dkt. No. 13, at 3-19 [Def.'s Mem. of Law].)

First, Defendant argues that the ALJ permissibly discounted the opinions of treating

physicians Dr. Ashraf and Dr. Mitchell because (a) Claimant's reported daily activities conflicted

with the opinions of the treating physicians, (b) Dr. Mitchell's opinion relied on Claimant's

COPD but (i) Claimant never had to be treated on an emergency basis for the condition, (ii)

Claimant repeatedly denied having shortness of breath when she saw her doctors, (iii) clinical

examinations nearly always showed regular, unlabored breathing, good airflow, and clear lungs,

and (iv) a pulmonary function test and spirometry study revealed only mild respiratory problems,

(c) Dr. Ashraf's opinion relied on Claimant's heart condition but (i) a treadmill test showed no

abnormalities, (ii) Claimant improved over time and described her arrhythmia in 2015, as only a

"mild" nuisance, and (iii) Claimant's cardiovascular examinations were consistently normal,

including normal heart rate, normal rhythm, no heart murmur, and no inflammation of the

extremities, (d) Dr. Mitchell's opinion also relied on Claimant's back impairment but (i) the

medical records reflect benign physical examination findings, and (ii) the ALJ noted that

Claimant's most recent lumbar x-ray showed only "mild" degenerative changes, (e) Claimant's

statements that she was in "good" overall health, her healthy appearance at appointments, the

fact that she was in no acute distress, and her statement in March 2017, to her doctor that she felt

well and had no acute concerns, undermine the opinions of Dr. Mitchell and Ashraf.  (*Id*.)  In

addition, Defendant argues that the ALJ articulated good reasons to reject the opinions of

Claimant's treating doctors including, *inter alia*, Claimant's daily activities, the conservative

treatment for COPD, normal physical examinations, and the objective cardiovascular and

respirator tests.  (*Id*.)

Second, Defendant argues that the ALJ re-contacted Dr. Magurno, as was required under

the remand order, and Dr. Magurno's opinion supports the RFC finding.  (*Id*.)  Defendant

concedes that "[f]or the most part, [P]laintiff is right" that "despite the ALJ's requests for

clarification, Dr. Magurno's opinion remained unclear as to 'the level of exposure to irritants

[that Claimant] can have' and 'fails to address [Claimant's] sitting [capacity].'"  (*Id*.)  However,

Defendant argues that Plaintiff has not demonstrated prejudicial error warranting remand

because (a) even if Claimant was unable to tolerate any level of exposure to pulmonary irritants,

the vocational expert testified that this would not have prevented her from doing her past work as

a bookkeeper, (b) Dr. Magurno's assessment of only a "mild" sitting limitation weighs in favor

of the ALJ's RFC finding, and, in any event, the ALJ only gave "some weight" to Dr. Magurno's

opinion while relying on other substantial evidence in the record to establish Claimant's RFC,

and (c) the ALJ reviewed evidence after Dr. Magurno's report in 2013, and, in any event, Dr.

7

Magurno's report was not stale because the evidence did not show a material deterioration in Claimant's symptoms.  (*Id*.)

Third, Defendant argues that at the hearing, the ALJ read the letter that he sent to Dr. Magurno regarding pulmonary irritants, verbatim to Plaintiff's representative.  (*Id*.)  In addition, Defendant argues that the ALJ was not required to proffer the letter that he sent to Dr. Magurno regarding Plaintiff's remaining RFC limitations, instead the ALJ was only required to proffer Dr. Magurno's response to that letter, which he did.  (*Id*.)  Moreover, Defendant argues that, in any event, Plaintiff fails to show that the failure to proffer the ALJ's letter to Dr. Magurno regarding Plaintiff's remaining RFC limitations, was harmful.  (*Id*.)

Fourth, Defendant argues that Plaintiff is not entitled to remand, and even if she were, a remand for the limited purpose of calculating benefits would be unwarranted.  (*Id*.)

## II.     APPLICABLE LEGAL STANDARDS

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a

mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work

activities.  If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has an
impairment which is listed in Appendix 1 of the regulations.  If the
claimant has such an impairment, the [Commissioner] will consider him
disabled without considering vocational factors such as age, education,
and work experience; the [Commissioner] presumes that a claimant who is
afflicted with a "listed" impairment is unable to perform substantial
gainful activity.  Assuming the claimant does not have a listed
impairment, the fourth inquiry is whether, despite the claimant's severe
impairment, he has the residual functional capacity to perform his past
work.  Finally, if the claimant is unable to perform his past work, the
[Commissioner] then determines whether there is other work which the
claimant could perform.  Under the cases previously discussed, the
claimant bears the burden of the proof as to the first four steps, while the
[Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

After carefully considering the matter, I recommend that the Court remand this matter to

the agency for further consideration, without a directed finding of disability because the ALJ

failed to clarify Dr. Magurno's opinion on respiratory irritants and sitting limitations and failed

to provide sufficient rationale for Claimant's RFC with respect to sitting limitations, for the

reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 12, Attach. 1 at 21-27.)  The

following is intended to supplement, but not supplant, those reasons.

### A.   Respiratory Irritant Limitation

In 2018, the District Court remanded this matter for a second time because the ALJ did

not comply with the Appeals Council's directive.  (Dkt. No. 6, Attach. 15 at 35.)  More

specifically, the District Court stated that "there was a very specific directive to [1] clarify Dr.

Magurno's opinion . . ., as well as [2] to indicate, to explain why after giving Dr. Magurno's

opinion significant weight, the RFC finding on environmental irritants was inconsistent with Dr.

Magurno's opinion in that it only found that the claimant should avoid concentrated exposure to irritants, whereas Dr. Magurno's opinion, which was supported by Dr. Ashraf, indicated that there should be no exposure to certain irritants." (*Id*.)  After the District Court's decision remanding the matter, the Appeals Council issued a remand order vacating the final decision of Defendant and remanding "this case to the Administrative Law Judge for further proceedings consistent with the order of the court."  (Dkt. No. 6, Attach. 15 at 43.)

Defendant concedes that, despite the ALJ contacting Dr. Magurno for clarification of her opinion regarding Plaintiff's respiratory irritant limitation, Dr. Magurno's opinion remained unclear.  (Dkt. No. 13 at 13.)

The failure to clarify Dr. Magurno's opinion may be a basis for remand.[1]  The regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 404.977(b).  Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand.  *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 120-24 (N.D.N.Y. 2010) (Kahn, J.) (remanding based on the ALJ's

---

[1]     I find that the ALJ sufficiently explained why, after giving Dr. Magurno's opinion "some weight," the RFC finding on respiratory irritants was not entirely consistent with Dr. Magurno's opinion.  For example, the ALJ noted that Claimant did not have any emergency room visits or hospitalizations for breathing difficulties, frequently denied experiencing shortness of breath, and often had negative respiratory clinical findings.  (Dkt. No. 6, Attach. 14 at 15.)  Moreover, the ALJ noted that Claimant continued to smoke, indicated that she was able to go outside and ride a motorcycle, do some cleaning, and shop in public places.  (*Id.* at 15-16.)  As a result, the ALJ concluded that Claimant could "tolerate at least some exposure to pollutants and other respiratory irritants.  Therefore, a restriction against any exposure to respiratory irritants is unwarranted." (*Id.* at 16.)  In addition, as identified by Defendant, to the extent that there was any error in the RFC with respect to the level of pulmonary irritants that Claimant could be exposed to, that error was harmless based on the vocational expert's testimony that Claimant could perform past work as a bookkeeper if she was required to "avoid dust, fumes, and respiratory irritants." (Dkt. No. 6, Attach. 14 at 67.)

failure to comply with the Appeals Council's remand order to follow the treating physician rule);

*Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at \*10 (N.D.N.Y. Dec. 10, 2009) (Mordue,

J.) (remanding, in part, based on the ALJ's failure to comply with the Appeals Council's remand

order to follow the treating physician rule).

### B. Sitting Limitation

In addition, in violation of the Appeals Council's remand, the ALJ did not clarify Dr.

Magurno's opinion regarding Claimant's sitting limitations.  (Dkt. No. 6, Attach. 19 at 63;

*accord* Dkt. No. 6, Attach. 14 at 12-13.)  The District Court stated, "[i]n terms of analysis, I

conclude first that the Administrative Law Judge absolutely did not comply with the Appeals

Council directive.  I understand the argument that the Second Circuit may certainly have altered

its view of things, and in particular the use by the consultative examiners of terms like mild,

moderate and marked, but there was a very specific directive to clarify Dr. Magurno's opinion"

on the issue of Claimant's sitting limitation.  (Dkt. No. 6, Attach. 15 at 35.)

Dr. Magurno's original opinion stated that Claimant had "mild limitations for sitting."

(Dkt. No. 6, Attach. 7 at 23; *accord* Dkt. No. 6, Attach. 19 at 69.)  Dr. Magurno was "asked to

expand on [her] medical source statement" and indicated that "[s]ince the examination took place

in 2013, [she did] not have any chart contents to review; [she had] no direct recollection of

[Claimant], and [could] only respond based on [her] 10-10-2013 report. The information

provided . . . is somewhat speculative, but it is [based on her] best estimate."  (Dkt. No. 6,

Attach. 19 at 63.)  With these qualifications, Dr. Magurno's addendum was silent as to sitting but

opined that in an eight hour work day, Claimant could (1) lift up to ten pounds continuously, and

eleven to twenty pounds frequently; (2) carry up to ten pounds frequently, and eleven to twenty

pounds occasionally; (3) stand a maximum of three hours; and (4) walk a maximum of two

hours.  (Dkt. No. 6, Attach. 19 at 63; *accord* Dkt. No. 6, Attach. 14 at 12-13.)

The ALJ found that "Dr. Magurno's assessment [is] entitled to some weight because it is

supported by her clinical findings.  The undersigned further notes that while the limitations Dr.

Magurno describes would not permit light exertion, they certainly would allow the claimant to

perform work at the sedentary exertion level."[2]  (Dkt. No. 6, Attach. 14 at 13.)  However,

sedentary work "[b]y its very nature . . . requires a person to sit for long periods of time," *Carroll*

*v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir. 1983), specifically six hours per

day.  *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010); *see also* 20 CFR 404.1567(a) ("[A]

sedentary job is defined as one which involves sitting.").  Despite the specificity of that

requirement, the ALJ considered it to be fulfilled by the report of Dr. Magurno's addendum,

which did not mention Claimant's capacities or limitations with respect to sitting for an extended

period.  (Dkt. No. 6, Attach. 19 at 63); *see Correa v. Colvin*, 13-CV-2458, 2014 WL 4676513, at

*7 (E.D.N.Y. Sept. 19, 2014) (remanding where the ALJ's determination that claimant could sit

for six hours was based primarily on a doctor's report, which "did not mention, much less test or

observe, plaintiff's capacities or limitations with respect to sitting for an extended period.  That

alone makes [the doctor's] report an insufficient basis for the ALJ's decision."); *Archambault v.*

---

[2]      To the extent that the ALJ also relied on Claimant's daily activities, including household
chores, riding her motorcycle, and caring for her mother, there was no evidence that she did
these activities for a long period of time as would be required for sedentary work. *Cf. Carroll v.*
*Sec'y of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir. 1983) ("Nor has the Secretary
sustained his burden on the basis of (1) Carroll's testimony that he sometimes reads, watches
television, listens to the radio, rides buses, and subways, and (2) the ALJ's notation that Carroll
'sat still for the duration of the hearing and was in no evident pain or duress.' There was no proof
that Carroll engaged in any of these activities for sustained periods comparable to those required
to hold a sedentary job.  On the contrary, as far as the record is concerned he did these things
only for short periods.").

*Astrue*, 09-CV-6363, 2010 WL 5829378, at *27 (S.D.N.Y. Dec. 13, 2010) (remanding and

characterizing as "elusive" ALJ's determination that claimant could sit for six hours, when

primary report relied upon made no reference to sitting), *report and recommendation adopted*,

2010 WL 649665 (S.D.N.Y. Feb. 17, 2011).

In addition, Dr..Magurno's "Internal Medicine Examination" simply stated that Claimant

had "mild limitations for sitting."  (Dkt. No. 6, Attach. 19 at 69.)  "What Dr. [Magurno] means

by 'mild' . . . is left to the ALJ's sheer speculation."  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir.

2013) (citing *Carrube v. Astrue*, 08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009)

(reversing denial of benefits where Dr. Naughten offered an opinion that the claimant "should be

able to lift . . . objects of a mild degree of weight on an intermittent basis," noting that the court

"cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry

between twenty-five to fifty pounds"), *report and recommendation adopted by*, 2010 WL

2178499 (N.D.N.Y. May 28, 2010) (Scullin, J.)); *see also Blau v. Berryhill*, 395 F. Supp. 3d 266,

281-82 (S.D.N.Y. 2019) (collecting cases) (holding that "terms such as 'mild' and 'moderate'

can constitute substantial evidence where 'the facts underlying that opinion and the other

medical opinions in the record lend [the terms] a more concrete meaning.'").  As the case law in

this Circuit makes clear, an assertion that there is a "mild" limitation as to sitting, without more,

is vague and thus provides little additional support for the ALJ's findings as to Claimant's RFC.

Because it is not clear that Dr. Magurno's examination found Claimant's impairments to be less

severe than Dr. Ashraf and Dr. Mitchell, who both opined that Claimant could sit for less than

two hours in an eight-hour working day (Dkt. No. 6, Attach. 7 at 56-57; Dkt. No. 6, Attach. 13 at

644-645), I cannot conclude that the ALJ could properly use Dr. Magurno's assessment of

Claimant to support his RFC determination.

14

Reversal and remand for the calculation of benefits is only warranted "when there is

'persuasive proof of disability' [in the record] and further development of the record would not

serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting

*Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)).  Remand for further consideration, on the

other hand, is justified when the ALJ has applied an improper legal standard, or further findings

and explanations would clarify the ALJ's decision. *See Rosa,* 168 F.3d at 82-83; *Parker v.*

*Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v.*

*Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, I recommend that this matter be

remanded for the purpose of making further findings and offering additional explanations of the

evidence, and not because of a finding that there is persuasive proof of disability in the existing

record.

As a result, I recommend that Plaintiff's motion for judgment on the pleadings be

granted, Defendant's motion for judgment on the pleadings be denied, the ALJ's determination

be reversed, and the matter remanded to the agency for further consideration, without a directed

finding of disability.[3]

---

[3]    However, for the reasons set forth in Defendant's memorandum of law, I reject Plaintiff's
arguments that the ALJ failed to properly evaluate the opinions of Claimant's treating physicians
and violated due process by failing to proffer the letters sent to Dr. Magurno requesting
clarification of her opinions.  (Dkt. No. 13 at 3-13, 17-18.)  In addition, the HALLEX provision
cited by Plaintiff "constitute[s] [an] internal agency document[ ] without force of law. . . .
'Therefore, [it] do[es] not create judicially enforceable duties, and we will not review allegations
of noncompliance with [its] provision[ ].'" *Delgrosso v. Colvin*, 13-CV-1470, 2015 WL
3915944, at *6 n.18 (N.D.N.Y. June 25, 2015) (Suddaby, J.) (citing *Jones-Reid v. Astrue*, 934 F.
Supp. 2d 381, 407-08 (D. Conn. 2012)); *Valet v. Astrue,* 10-CV-3282, 2012 WL 194970, at *12
n.21 (E.D.N.Y. Jan. 23, 2012); *Doherty v. Astrue,* 07-CV-0954, 2009 WL 1605360, at *8
(N.D.N.Y. June 5, 2009) (Bianchini, M.J.) (internal citations omitted). "The Court is therefore
not bound to find error based on a duty to proffer records found in HALLEX." *Robert B. v.*
*Comm'r of Soc. Sec.*, 17-CV-0508, 2018 WL 4215016, at *7 (N.D.N.Y. Sept. 5, 2018) (Stewart,
M.J.).

ACCORDINGLY, it is

RECOMMENDED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12)

be **GRANTED**; and it is further

RECOMMENDED that Defendant's motion for judgment on the pleadings (Dkt. No.

13) be **DENIED**; and it is further

RECOMMENDED that the Commissioner's decision denying Plaintiff disability

benefits be **VACATED**; and it is further

RECOMMENDED that the matter be **REMANDED**, without a directed finding of

disability for further proceedings consistent with this Report-Recommendation.


Dated:  September 25, 2020
        Syracuse, New York

Miroslav Lovric
U.S. Magistrate Judge